SOUTHERN BELL TELEPHONE AND
TELEGRAPH COMPANY

v.

LOUISIANA POWER & LIGHT
COMPANY.

Civ. A. No. 11796.

United States District Court
D. Louisiana.

Sept. 10, 1963.

James C. Henriques, Jr., New Orleans, La., John A. Boykin, Jr., John C. McRee, Atlanta, Ga., for plaintiff.

Andrew C. Carter, for defendant.

FRANK B. ELLIS, District Judge.

On January 2, 1929, plaintiff and defendant, Southern Bell Telephone & Telegraph Company, and Louisiana Power & Light Company, hereafter referred to as Telephone Company and Power Company, entered into an Agreement for Joint Use of Poles, which Agreement was in accordance with the "Principles and Practices For The Joint Use of Wood Poles" By Supply and Communication Companies, issued February 15, 1926, by the Joint General Committee of the National Electric Light Association and Bell Telephone System. The purpose of the Agreement was to establish joint use of their respective poles when and where such joint use would be of mutual advantage.

The Agreement exhibits brilliant draftsmanship and contains some twenty Articles bearing upon Definitions; Scope of Agreement; Placing, Transferring or Rearranging Attachments; Erecting, Replacing or Relocating Poles; Procedure when Character of Circuits is Changed; Specifications; Right of Way for Licensee's Attachments; Maintenance of Poles and Attachments; Abandonment of Jointly Used Poles; Rentals; Periodical Readjustment of Rentals; Performance of Work; Liability and Damages; Existing Rights of Other Parties; Service of Notice; Term of Agreement; Assignment of Rights; Arbitration; Waiver of Terms or Conditions; and, Existing Contracts.

The Agreement could be terminated by either party upon giving one year's written notice. It has remained in effect from that day until this, a period of thirty-four years.

On or about August 17, 1959, an employee of Telephone Company, Dudley C. Corkern, was killed by electrocution while working in the course of his employment on a pole owned by Power Company, jointly used by Telephone Company and located in the City of Bogalusa, Louisiana. Telephone Company settled and was discharged of all legal liability under the Louisiana Workmen's Compensation Statute [1] and on or about July 1, 1960, Mrs. Grace Denny Corkern, individually and as tutrix of her minor children, filed suit against the Power Company in the Twenty-Second Judicial District Court, hereafter referred to as the Corkern Suit or the State Court action.

In its answer Power Company filed a third-party action against Telephone Company asserting that the pole upon which Corkern was electrocuted was a Joint Use Pole, that Telephone Company was negligent, and, if there be judgment against Power Company, then Power Company be given judgment over against Telephone Company under the indemnity provisions of the Joint Use Agreement.

Telephone Company sought to have the State Court third-party action dismissed in that the claim for indemnification [2] was covered by the Arbitration provision

1. LSA–Revised Statutes, Title 23, Section 1 et seq.

2. "Whenever any liability is incurred by either or both of the parties for damages for injuries to the employees * * * arising out of the joint use of poles under this agreement, or due to the proximity of the wires and fixtures of the parties hereto attached to the jointly used poles

of the Joint Use Agreement.[3] Power Company countered with the contention that the arbitration article did not cover claims for indemnity. The State District Court denied the motion to dismiss, the State Court of Appeals affirmed [4], and the State Supreme Court refused Writs of Certiorari.[5]

Thereafter, on December 8, 1961, Telephone Company initiated this action for Declaratory Judgment [6] to protect its legal rights and compel arbitration under the Federal Arbitration Act.[7] The complaint seeks this Court to issue a declaratory judgment holding that the disputed claim in the State Court third-party action is arbitrable and seeks to have Power Company enjoined and restrained from any further prosecution of the third-party action and an order that Power Company submit to arbitration any claim or indemnity it may assert against Telephone Company based on any judgment entered against Power Company in the Corkern Suit.

Defendant Power Company forthwith moved this Court for summary judgment dismissing the complaint, which motion was granted.[8] Plaintiff Telephone Company appealed and the judgment of this

covered by this agreement, the liability for such damages, as between the parties hereto, shall be as follows:

"(2) Each party shall indemnify and hold the other party harmless from all damages for such injuries to the former's employees * * * that are caused by the negligence of both parties hereto or that are not shown to have been caused by the sole negligence of the other party." (Joint Use Agreement, Article XVII.)

3. "When differences arise in connection with the administration of this agreement, which cannot amicably be settled by the parties hereto, such questions shall be submitted for determination to a Board of Arbitrators to be selected as follows:" (There follows a method of selecting Arbitrators, and their modus operandi once selected.) (Joint Use Agreement, Article XVIII.)

4. Unreported. The Judgment of the State Court of Appeals was a one-sentence affirmation, "The ruling of the District Court is correct."

5. Unreported. The Louisiana Supreme Court neither affirmed nor reversed. The Court, in a one-sentence exposition, stated that "Relator has a remedy by appeal in the event of an adverse judgment on the merits."

6. 28 U.S.C. § 2201. Creation of remedy. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. § 2202. Further relief. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

7. 9 U.S.C. § 1 et seq.

8. "Since one of the parties to the contract in suit does no interstate business and the subject matter of the agreement is the joint use of utility poles located only in Louisiana, a serious doubt arises whether the Federal Arbitration Act is applicable * * *. If that statute is not involved, there is no pretext for the intrusion of a federal court which, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188,] and Guaranty Trust v. York, 326 U.S. 99, [65 S.Ct. 1464, 89 L.Ed. 2079] must follow the decisions of the state courts on the arbitration issue * * * and, in the absence of such decisions, should abstain. * * *

"Nor is the case for intervention by this Court much better if the Federal Arbitration Act governs the issue tendered. For state courts are equally bound to enforce the federal right when it is operative, * * * and the applicant here cannot be heard to complain because he neglected to plead the Act in the proceeding pending there.

"In any event, even if there is no absolute bar to the present action * * * the policy against re-litigation of issues and principles of comity strongly counsel restraint in the exercise of a discretionary jurisdiction, invoked so late, to halt state court proceedings in order to enforce a questionable federal right to arbitration." (Citation of authority omitted.)

Court was reversed,[9] the Court holding, in essence, that "The doctrine of abstention is not involved because no question of the construction of state law is involved here[10] and that "Telephone Company has the right to a decision on the declaratory judgment issue and is entitled to pursue that right in the forum of its choice[11]." The United States Supreme Court denied certiorari.[12]

The matter is once again before this Court on motions for summary judgment under Rule 56[13], plaintiff asking that the controversy be declared arbitrable and an injunction issue; and, defendant asking that the controversy be declared non-arbitrable and that the suit be dismissed.

Power Company first contends that the Federal Arbitration Act is inapplicable in that the Joint Use Agreement does not "evidence a transaction involving commerce"[14] as the term "commerce" is defined in the Act.[15]

Defendant filed into the record its affidavit that it is engaged in the transmission, distribution and sale of electric energy wholly and entirely within the State of Louisiana; that it does not sell electricity outside of Louisiana; that all of the 55,000 poles subject to the Joint Use Agreement are located in Louisiana; that

the parties intended that the Agreement only cover poles located in Louisiana; that all 1700 of its employees are employed and work solely and exclusively in Louisiana; that all of its property, movable and immovable, tangible and intangible, is located wholly and entirely within the State of Louisiana; and, that the business operations are directed and controlled from the general office located in New Orleans, Louisiana.

Telephone Company introduced its uncontroverted affidavit that it is engaged in the operation of a telephone and communication business in the States of Alabama, Florida, Georgia, Kentucky, Louisiana, Mississippi, North Carolina and Tennessee; that it is an interstate communications carrier and is subject to the jurisdiction and regulation of the Federal Communications Commission; that its facilities are interconnected with the toll facilities of the American Telephone and Telegraph Company, and numerous other telephone companies, and is an integral part of a nationwide and worldwide network of telephonic communication facilities; that plaintiff Telephone Company operates over 600,000 telephones in the thirty-four Parish area in which are located the poles subject to joint use;[16] and, as a *coup d'grace*, that 12,184,190

9. Southern Bell Telephone & Telegraph Company v. Louisiana Power & Light Company, 5 Cir., 309 F.2d 181.

10. Southern Bell Telephone & Telegraph Company v. Louisiana Power & Light Company, supra, 309 F.2d at page 183.

11. Ibid.

12. Louisiana Power & Light Co. v. Southern Bell Telephone & Telegraph Co., 373 U.S. 952, 83 S.Ct. 1682, 10 L.Ed.2d 706.

13. Federal Rules of Civil Procedure, Rule 56, 28 U.S.C.

14. 9 U.S.C. § 2—Validity, irrevocability, and enforcement of agreements to arbitrate.
    "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agree-

ment in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

15. 9 U.S.C. § 1—"Maritime transactions" and "commerce" defined; exceptions to operation of title. " * * * 'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation * * *"

16. Ascension, Assumption, Avoyelles, Bienville, Caldwell, Claiborne, Concordia, East Carroll, Franklin, Grant, Iberville, Jackson, Jefferson, Lafourche, Lincoln, Madison, Morehouse, Orleans, Ouachita,

interstate toll calls originated in the aforementioned thirty-four parish area.

■ In the light of the foregoing the Court can take judicial notice of the fact that telephone calls may be made from anywhere in the thirty-four parish area to anywhere in the world, whether these calls be social or business in nature.[17]

■ The Court is constrained to find under these circumstances that the Joint Use Agreement of January 2, 1929, does evidence a "transaction involving commerce" as the term "commerce" is defined in the Federal Arbitration Act and *a fortiori* when one considers that the Federal Arbitration Act does not require that both parties be engaged in "commerce", the sole requirement being that the "contract evidenc[e] a transaction involving commerce." [18]

Defendant asserts that this Court is precluded from ruling on the arbitration issue by virtue of the Erie [19] and Guaranty Trust [20] doctrines in that the State Court of Appeals and Supreme Court have ruled on the matter.

■ In seeking a stay in the State Court proceedings plaintiff telephone company exerted rights under the Louisiana Arbitration Act [21] and it may be presumed that those Courts passed upon the applicability of that act. Rights un-

der the Federal Arbitration Act were not pressed in the State Court and the mere fact that plaintiff did not assert its rights under the Federal Act in the State Court can in no way prejudice its rights to seek redress in this Court.[22]

If the Plaintiff Telephone Company had chosen to exert its rights under the Federal Arbitration Act in the State Court action *ab initio*, unsuccessfully, and then had come to this Court for redress, a different situation might prevail. However, the State Court was not the forum of plaintiff's choice, but, rather, it was thrust into that proceeding under the compulsion of the third-party action.

■ Thus the plaintiff is perfectly within its legal rights to seek relief under the State Arbitration Act in the State Court, and, in the absence of success, exert its rights under the Federal Arbitration Act in this Court. Therefore, this Court is not proscribed by the Erie and Guaranty Trust doctrines.[23]

We press on the real heart of the problem, that is, the question of whether or not the arbitration of the Joint Use Agreement [24] is binding on the parties.

In determining the scope of an arbitration agreement the Court's wisest course of action is the determination of matters excluded from arbitration. When thus considered, matters included

---

Plaquemines, Red River, Richland, St. Bernard, St. Charles, St. James, St. John the Baptist, Tangipohoa, Tensas, Terrebonne, Union, Washington, Webster, West Carroll and Winn Parishes.

17. See National Labor Relations Board v. J. G. Boswell Co., 9 Cir., 136 F.2d 585 and National Labor Relations Board v. Central Missouri Telephone Company, 8 Cir., 115 F.2d 563.

18. It is also well to note that "Jurisdiction was invoked under the Federal Arbitration Act and on the ground that the parties are citizens of different states and that the amount in controversy exceeds $10,000.00." Southern Bell Telephone & Telegraph Company v. Louisiana Power & Light Company, supra, 309 F.2d at Page 182.

19. Erie Railroad Company v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

20. Guaranty Trust Company v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

21. LSA–Revised Statutes, Title 9, Section 4201 et seq.

22. Southern Bell Telephone & Telegraph Company v. Louisiana Power and Light Company, supra.

23. Nor does this ruling run against the grain of Kline v. Burke Construction Company, 260 U.S. 226, 43 S.Ct. 79, 67 L. Ed. 226, and Glen Oaks Utilities, Inc. v. City of Houston, 5 Cir., 280 F.2d 330, which permit simultaneous litigation of identical issues in state and federal courts to finality. All that has been decided is that the heretofore unexerted rights under the Federal Arbitration Act may be a proper subject of an additional, simultaneous but non-identical controversy in this court.

24. See Footnotes 2 and 3, supra, for the text of the Articles.

within and covered by the arbitration agreement come more sharply into focus. The coverage of the agreement reads as follows: "When *differences* arise in connection with the *administration* of this agreement, which cannot amicably be settled by the parties hereto, such questions shall be submitted for determination to a Board of Arbitrators * * *." (Italics supplied.)

It will be noted that neither the arbitration clause, nor any other provision of the Joint Use Agreement, clearly spells out just exactly which differences are arbitrable, and which are not. It indubitably follows that all differences arising out of joint use of the property are the subject of arbitration.

Viewing the Arbitration Article in a light most favorable to defendant, Power Company, the Court finds that there is, at best, a doubt as to whether or not this matter is a proper subject of arbitration, and when in doubt, the question is always resolved in favor of arbitration.[25] It is also rather difficult for this Court to envision two of the largest utility companies in the South, with such able and illustrious counsel at their elbows, drafting an Arbitration Article which, by intent, covers only part of the entire Agreement and not clearly spelling out which Articles are arbitrable and which are non-arbitrable.

Defendant Power Company further contends that this Court is precluded from enjoining the State Court third-party action by the provisions of 28 U.S.C. § 2283[26] which provides three exceptions to the rule precluding the use of federal process to enjoin State Court actions. The Court agrees with defendant that the injunction requested is not expressly authorized by an Act of Congress and that it would not be necessary to aid this Court in its jurisdiction. However, the third exception in § 2283 allows injunctive relief when a federal court seeks to protect or effectuate its judgments.

It must be borne in mind from the outset that this Court has been in effect instructed by the Fifth Circuit Court of Appeals to decide the issue tendered by the petition for declaratory judgment[27] and this issue is by the Fifth Circuit said to be " * * * whether the indemnity provisions in the agreement are to be governed by the arbitration provisions set out therein."[28]

Thus considered, in its chronological sequence, it appears that this Court does have the power to so enjoin defendant, and, since the controversy is arbitrable, will proceed to do so.

It is now ordered that summary judgment as prayed for by plaintiff be granted, and, that an injunction issue restraining defendant Louisiana Power & Light Company from further prosecuting its third-party action in the State Court Action.

It will be further ordered that if defendant Louisiana Power & Light Company is cast in judgment in the State Court the parties proceed to arbitration in accordance with the provisions of Article XVIII of the Joint Use Agreement on the matter of indemnification as set forth in Article XIII.

The Court will further order that the motion by defendant for summary judgment be denied.

So ordered.

---

25. Shanferoke Coal & Supply Corporation v. Westchester Service Corporation, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Kulukundis Shipping Company, S/S v. Amtorg Trading Corporation, 2 Cir., 126 F.2d 978; Signal Stat Corporation v. Local 475, 2 Cir., 235 F.2d 298, Cert. Den. 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428.

26. 28 U.S.C. § 2283. Stay of State Court Proceedings. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

27. Southern Bell Telephone & Telegraph Company v. Louisiana Power & Light Company, supra, 309 F.2d at Page 183.

28. Ibid, 309 F.2d at Page 182.